Pittsburgh Forgings Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Perry Rose, Respondents.

Pittsburgh Forgings Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Dennis K. Stark, Respondents.

Argued December 12, 1980, before Judges WILKINSON, JR., WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

Henry J. Wallace, Jr., with him John B. Bechtol, Reed, Smith, Shaw & McClay, for petitioner.

Alexander J. Pentecost, with him Amiel B. Caramanna, Jr., for respondents, Perry O. Rose and Dennis K. Stark.

OPINION BY JUDGE WILKINSON, JR., January 19, 1981:

The two cases which have been consolidated for appeal here involve awards of benefits by the Workmen's Compensation Appeal Board (Board) pursuant to The Pennsylvania Workmen's Compensation Act (Act)[1] for facial and neck disfigurement resulting from burns sustained by claimants while working for Pittsburgh Forgings Company (employer). We affirm.

At the times of their respective injuries, claimant, Perry O. Rose, and claimant, Dennis K. Stark, both worked as hot press operators or ''trimmers'' in employer's forge shop. As trimmers, claimants work on the opposite side of a forging hammer from the hammerman who shapes the forging with the use

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §1 et seq.

of a large oscillating hammer which may strike the hot metal at the rate of ten to fifteen times a minute. When the forging is completed by the hammerman, it is transported by the use of hand tongs to the trimmer who trims the excess metal. During the forging and trimming process, when pressure is applied to the material being forged, hot scale flies off the metal into the surrounding area. Scale is the carbonization of the surface of the steel; a thin, flaky substance which adheres to the forging until it is struck at which time it flies off in pieces of varying sizes. The trimmer works between two and one-half and five feet from the hammer. Trimmers wear wire full face screens, helmets, safety glasses and safety shoes. They also usually keep their shirt collars buttoned up and/or wear a kerchief or towel around their necks but they are not required to do so.

On March 22, 1979, claimant in 2234 C.D. 1979, Perry O. Rose, filed three claim petitions alleging that on July 10, 1978, August 16, 1978 and October 27, 1978 while working as a trimmer he sustained burns on his neck resulting in compensable disfigurement. After a hearing on April 24, 1979 the referee awarded compensation. The Board affirmed.

On May 16, 1979, claimant in 564 C.D. 1980, Dennis K. Stark, filed three claim petitions alleging disfigurement of the neck and face resulting from burns sustained on August 23, 1978, September 20, 1978 and October 20, 1978. After a second hearing,[2] the referee denied compensation for the August 23, 1978 injury and granted compensation for the scars re-

---

[2] The first hearing on the petitions was held on July 17, 1979 before a referee who, due to serious illness, did not render a decision in the case. The case was subsequently reassigned to another referee who held a second hearing on September 10, 1979. Neither party had objections to this procedure.

sulting from the other two injury dates. The Board affirmed.

Section 306(c)(22) of the Act[3] provides compensation for "serious and permanent disfigurement of the head, neck or face, of such a character as to produce an unsightly appearance, and such as is not usually incident to the employment".

The narrow issue raised by petitioner is whether the disfigurement suffered by each claimant here is usually incident to his employment within the meaning of Section 306(c)(22) of the Act.

Employer argues that the records below lack substantial evidence to support the referees' findings and conclusions that the claimants' disfigurements are not incident to their employment. In this very close case, our limited scope of review requires that we reject this argument in both cases.

In a case involving compensation for disfigurement, the claimant bears the burden of proving that his disfigurement is not usually incident to his employment. *East Coast Shows v. Workmen's Compensation Appeal Board,* 37 Pa. Commonwealth Ct. 312, 313-14, 390 A.2d 323, 324 (1978). Questions of credibility, the choice between conflicting testimony, and accepting or rejecting the testimony of any witness in whole or in part are all within the referee's unique fact-finding role. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977).

### 2234 C.D. 1979

The evidence in claimant-Rose's case consisted of Mr. Rose's testimony, a plant superintendent's testimony, a company job description, and a company

[3] Added by Section 1 of the Act of May 20, 1921, P.L. 966, *as amended,* 77 P.S. §513(22).

promotional brochure. This evidence clearly established that trimmers are exposed to hot flying scale and are burned as a result. However, as testified to at the hearing and as recognized in a similar case, *Wheeling-Pittsburgh Steel Corp. v. Workmen's Compensation Appeal Board,* 41 Pa. Commonwealth Ct. 279, 282, 398 A.2d 1107, 1108 (1979), "all burns do not involve scars". Furthermore, "[t]he statute precludes compensation only when *disfigurement* is incidental to the work". (Emphasis in original.) *Id.* at 282, 398 A.2d at 1108.

The referee's and Board's finding that scarring (*i.e.* disfigurement) was not incidental to a trimmer's work is supported by substantial evidence in the form of cross-examination testimony of the plant superintendent. He stated that although he had been burned many times, he was not scarred or disfigured and that some people have no scars from their burns while others are permanently scarred. The employer did not offer any affirmative evidence to show that disfiguring scars, not just burns, are the usual result of working as a trimmer. Employer would have us draw favorable inferences from the record evidence concerning the frequency of burns on the job and conclude that disfigurement in the form of scars is incidental to the work of a trimmer. Because the claimant, not the employer, as the party who prevailed below, is entitled to the benefit of the most favorable inferences to be drawn from the evidence, *American Refrigerator Equipment Co., supra,* and because substantial evidence supports the fact that scarring is *not* a usual result of the work, we must affirm the Board's order granting compensation.

### 564 C.D. 1980

The evidence in claimant-Stark's case consisted of Mr. Stark's testimony at two separate hearings and

the referee's view of the claimant's work area during a tour of the plant. Once again, the evidence established that exposure to flying scale and burns is a hazard of the job. In addition, claimant testified that he had filed claim petitions for alleged disfigurement for six other dates than the occurrences in question in this case. Nevertheless, substantial evidence for the referee's finding that disfigurement is not usually incident to claimant's employment is found in claimant's testimony. He stated that he was not burned and scarred "all that frequently" because exposure to the flying scale varies depending on the expertise of the crew, the temperature of the steel, and the number of hammer strokes required to complete the forging. In view of that testimony and the fact that no affirmative evidence was presented showing that disfigurement is usually incident to the work, we cannot say that the referee's finding was unsupported by substantial evidence.[4]

On the basis of the evidence presented in the records below and in view of our appropriate scope of review, we will accordingly enter the following

ORDER

AND Now, January 19, 1981, the orders of the Workmen's Compensation Appeal Board, dated October 11, 1979 at No. A-77201 and dated February 7, 1980 at No. A-77921, are hereby affirmed.

Further, it is ordered that judgment be entered in favor of the claimant, Perry O. Rose, and against petitioner, Pittsburgh Forgings Company, self-insured, in the following amounts: (a) $213.00 per week,

---

[4] As the ultimate fact-finder, it was within the referee's province to either disregard that portion of claimant's testimony concerning the number of claim petitions filed by claimant or to consider that evidence unpersuasive in proving that disfigurement usually results from the employment.

for a period of six weeks, beginning on July 11, 1978 continuing through August 21, 1978, inclusive, in the total amount of $1,278.00 with all disability resulting from the injuries of July 10, 1978 and August 16, 1978 ceasing and terminating on August 22, 1978. Interest is not assessed. (b) $213.00 per week, for a period of ten weeks, beginning on October 28, 1978 continuing through January 5, 1979, inclusive, in the total amount of $2,130.00 with all disability resulting from the October 27, 1978 injury ceasing and terminating on January 6, 1979. Interest is not assessed.

Reasonable attorney's fees in the amount of $340.80 are approved and the petitioner, self-insured, is directed to deduct said amount from the deferred compensation due claimant, Perry O. Rose, and forward it directly to:

Alexander J. Pentecost, Esq.
1420 Grant Building
Pittsburgh, Pa. 15219

The remaining compensation in the amount of $3,067.20 shall be paid directly to claimant, Perry O. Rose.

Further, it is ordered that judgment be entered in favor of the claimant, Dennis K. Stark, and against petitioner, Pittsburgh Forgings Company, self-insured, in the following amounts: (a) $213.00 per week, for a period of five weeks, beginning September 21, 1978 continuing through October 25, 1978, inclusive, in the total amount of $1,065.00, together with interest at the rate of 10% per annum on all deferred payments of compensation; (b) $213.00 per week, for a period of three weeks, beginning October 26, 1978 continuing through November 15, 1978, inclusive, in the total amount of $639.00, together with interest at the rate of 10% per annum on all deferred payments of compensation.

All disability resulting from the injuries of September 20, 1978 and October 20, 1978 shall cease and terminate on November 16, 1978.