**CITY OF PHILADELPHIA, RISK MANAGEMENT DIVISION,**
Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HARVEY),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 27, 1996.
Decided March 13, 1997.

---

James M. Pacious, Philadelphia, for petitioner.

Thomas F. McDevitt, Philadelphia, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

The City of Philadelphia (City) appeals from an order of the Workmen's Compensation Appeal Board (WCAB) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting Derrick Harvey (Claimant) sixty-one weeks of compensation benefits for disfigurement pursuant to section 306(c)(22) of the Workers' Compensation Act (Act).[1]

Claimant was employed as a firefighter for the City. On January 13, 1994, while fighting a fire, Claimant was injured when a portion of the ceiling in the burning building fell and hit Claimant, knocking his helmet off, cutting Claimant and burning him. Claimant filed a claim petition alleging that he sustained disfiguring burns to his forehead, the right side of his neck, the area below his right ear, his right ear, his right eyebrow, his right cheek,

his right temple, and the front-right side of his neck, when hot embers went down inside his coat and fell onto his face and neck. (R.R. at 3a.) The City filed a timely answer, denying the allegations in Claimant's petition, and, on May 20, 1994, a hearing was held before the WCJ.

At the hearing, Claimant appeared and testified in support of his petition, describing the details of the accident, and, although the City cross-examined Claimant, it offered no witnesses of its own. The WCJ credited Claimant's testimony and found that, while in the course of his employment for the City, Claimant sustained cuts and burns to his face, head and neck. (WCJ's Finding of Fact, No. 5.) After viewing Claimant, the WCJ found that, as a result of the January 13, 1994 incident, Claimant has:

1.) a reddish mark, which is approximately one inch in length and below the claimant's ear, which is approximately one-quarter of one inch in width, and which is different in coloration in comparison to the coloration of the claimant's ear; 2.) a reddish mark, which is about the size of a penny, which is approximately three-quarters of one inch in length on the claimant's neck and at the claimant's collar line; 3.) a reddish mark, which is approximately one-half to three-quarters of one inch in length on the side of the claimant's right cheek, which is approximately three-eighths of one inch in width, and which is different in coloration in comparison to the coloration of the claimant's right cheek; 4.) a mark which is about three-quarters of one inch in length by one-half of one inch in width on the claimant's forehead and which is irregular in shape; and 5.) a reddish mark, which is approximately one inch in length on the claimant's neck and which is approximately one-quarter of one inch in width.

(WCJ's Finding of Fact, No. 6.) The WCJ also found that all the marks and scars Claimant incurred in the course and scope of his employment were serious, unsightly, permanent and not usually incident to Claim-

1. Section 306(c)(22) of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(22), provides that for serious and permanent disfigurement of the head, neck or face, which produces an un-

sightly appearance and which is not usually incident to the employment, the compensation shall be sixty-six and two-thirds per centum of wages not to exceed two hundred seventy-five weeks.

ant's employment. (WCJ's Findings of Fact, Nos. 7–9.) On this basis, the WCJ concluded that Claimant sustained his burden of proof. Exercising her discretion, the WCJ then awarded Claimant a total of sixty-one weeks of benefits, at the rate of $493.00 per week, for his five disfiguring burn marks.[2]

The City appealed to the WCAB, arguing that it was error to award benefits where Claimant: (1) failed to demonstrate that all the alleged scars occurred in the course and scope of his employment; (2) failed to offer medical evidence to prove that these scars were permanent; and (3) offered no proof to support his burden that the scars were not usually incident to employment. Employer also maintained that the WCJ abused her discretion by entering an award significantly higher than most other WCJs would have selected.

 The WCAB disagreed that Claimant had been overcompensated for the disfigurements he suffered in the line of duty, or that the award was out of line with the range most WCJs would select. Further, having also viewed Claimant, the WCAB, like the WCJ, concluded that Claimant's disfigurements were serious, unsightly, permanent and not usually incident to Claimant's employment. Accordingly, the WCAB dismissed the City's appeal and affirmed the WCJ's decision. The City now appeals to this court,[3] raising precisely the same issues it raised before the WCAB.

 We have long held that where a claimant seeks an award of disfigurement benefits pursuant to section 306(c)(22) of the Act, he or she must prove that the injury occurred in the course of employment and that the disfigurement is (1) serious and permanent, (2) of such character as to produce an unsightly appearance, and (3) not usually incident to the claimant's employment. *Purex Corp. v. Workmen's Compensation Appeal Board,* 66 Pa.Cmwlth. 499, 445 A.2d 267 (1982); *East Coast Shows v. Workmen's Compensation Appeal Board,* 37 Pa.Cmwlth. 312, 390 A.2d 323 (1978); *Workmen's Compensation Appeal Board v. Fruehauf Corp.,* 23 Pa.Cmwlth. 466, 353 A.2d 63 (1976). The City contends that it was clear error for the WCAB to affirm the WCJ's award of disfigurement benefits here because Claimant failed to present evidence in support of any of these elements of his burden of proof.

First, the City contends that Claimant failed to demonstrate that all his alleged scars were work-related; in fact, the City maintains that the evidence contained in the record indicates precisely the opposite. In support of this argument, the City points out the inconsistencies between an Employee Injury Report (EIR), completed on the day of the accident, and the claim petition subsequently filed by Claimant. The City notes that the EIR was completed by Claimant's supervisor, who had the opportunity to fully assess Claimant's injuries and had a duty to report those injuries accurately, and that it clearly demonstrates that Claimant's sole injuries were to his neck.[4] (R.R. at 1a.) Moreover, the City points out that Claimant signed the EIR, certifying that it provided an accurate description of his injury. (R.R. at 2a.) The City argues that, in light of both the EIR and the claim petition, Claimant's neck injuries are the only ones that can be

---

**2.** The WCJ made separate awards for each of the five marks she described in Finding of Fact, No. 6: eleven weeks of compensation for the mark designated as number 1; nine weeks of compensation for mark number 2; fifteen weeks of compensation for mark number 3; fifteen weeks of compensation for mark number 4; and eleven weeks of compensation for mark number 5. The WCJ also awarded interest at the rate of ten percent per annum on all deferred amounts of benefits for these marks and burns, and she ordered the City to pay Claimant's litigation expenses. (WCJ's Conclusion of Law, No. 3.)

**3.** Our scope of review is limited to determining whether necessary findings of fact are supported

by substantial evidence, an error of law was committed, or constitutional rights were violated. *LTV Steel Co. v. Workmen's Compensation Appeal Board (Hawk),* 161 Pa.Cmwlth.632, 638 A.2d 292 (1994).

**4.** The City notes that the EIR sets forth an extensive list of body parts, thus affording an injured employee the opportunity to identify any and all of the specific portions of the body which are injured, including the face, head and ear. The City stresses that, despite the numerous other options which were available, the supervisor only marked the box indicating an injury to the neck. (R.R. at 1a.)

determined to have occurred in the course of his employment, and that serious credibility questions arise with regard to Claimant's contention that his other facial scars are related to the events of January 13, 1994. We disagree.

■ In a workers' compensation proceeding, the WCJ is the ultimate fact-finder, and he or she has the sole prerogative of assessing credibility and resolving conflicts in testimony. *LTV Steel Co. v. Workmen's Compensation Appeal Board (Hawk)*, 161 Pa. Cmwlth.632, 638 A.2d 292 (1994). In this role, the WCJ may accept or reject the testimony of any witness in whole or in part. *Id.* Here, the City offered as evidence the EIR, which indicated only one area of injury located on Claimant's neck; however, after hearing Claimant testify and viewing Claimant's injuries, the WCJ resolved the conflicts in evidence by crediting Claimant's testimony and the statements made in Claimant's claim petition with respect to the work-relatedness of all five of Claimant's scars. Because the WCJ's finding is supported by substantial evidence, we will not disturb it on appeal.

■ Next, the City argues that the WCJ's finding of permanent disfigurement is unsupported by evidence in the record because Claimant failed to offer the medical evidence required to prove permanence where there has been insufficient time to heal. The City correctly asserts that, as a general rule, competent medical evidence is required to support a finding that a disfigurement is permanent. *East Coast Shows.* Although acknowledging that we have carved out exceptions to the need to provide such medical evidence, the City maintains that Claimant's case does not fit within these exceptions.

We have held that medical evidence is unnecessary to establish the permanence of some types of injuries, where circumstances permit the fact-finder to determine permanence from his or her own observations. In this regard, we have determined that medical

evidence is not needed in cases such as the loss of an ear or nose, *see Workmen's Compensation Appeal Board v. Pizzo*, 21 Pa. Cmwlth. 370, 346 A.2d 588 (1975), or in cases of extensive facial scarring. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Deppenbrook)*, 82 Pa.Cmwlth.596, 476 A.2d 989 (1984); *East Coast Shows.* Notwithstanding the WCJ's finding that Claimant's scars are serious and unsightly, the City contends that Claimant's scarring is not extensive enough to place it within this exception.

We have also concluded that medical evidence of permanence is not required if sufficient time has elapsed from the date of the injury to the viewing upon which the WCJ bases a decision of permanence.[5] For example, in *Deppenbrook*, we determined that a referee's view of scarring twenty-one months after the injury was sufficient to support the finding of permanence. Similarly, in *Purex*, we held that because the referee had an opportunity to view the claimant more than fourteen months after his accident, medical evidence was not necessary to support the finding of permanence. In *East Coast Shows*, where the referee viewed the claimant's scars approximately ten months after the injury, and the WCAB did so four months after that, we held that it was reasonable to assume that the scar would not significantly diminish in the future. The City claims, however, that where, as here, the WCJ viewed Claimant's scars only slightly more than four months after the injury, Claimant's case cannot fit within this exception. We must disagree.

In making this argument, the City attempts to distinguish this case from *Koppers Co. v. Workmen's Compensation Appeal Board (Martin)*, 80 Pa.Cmwlth.288, 471 A.2d 176 (1984), in which we sustained an award for disfigurement without medical evidence of permanence where the referee viewed the claimant's scar six months after the date of injury. The City notes that, although we

---

5. This exception is based upon our determination that the Legislature's intent in using the word "permanent" in section 306(c)(22) of the Act was to provide compensation for a disfigurement which would not significantly diminish with the passage of time. Thus, where a viewing takes place a sufficient amount of time after the injury, the WCJ's finding of permanence based on that view is supported by substantial evidence. *See Deppenbrook.* However, no minimum amount of time has been established.

upheld the six-month period as sufficient in *Koppers*, we specifically commented that we were persuaded to do so by the fact that the WCAB, which viewed the scar eleven months following the incident, determined that the referee's finding of permanence was supported by substantial evidence. Thus, according to the City, *Koppers* stands for the proposition that at least eleven months is needed before a reasonable time period has elapsed to make a qualified decision regarding permanency. Even if this were so, however, the City's argument would fail.

██ What the City fails to mention is that, as in *Koppers*, the WCAB here also viewed Claimant well after the WCJ had her opportunity to view Claimant's scars,[6] and, based on that later viewing, the WCAB agreed with the WCJ that Claimant's scarring was permanent. Moreover, at the hearing before the WCJ, Claimant specifically testified that, although his burns improved shortly after his injury, that improvement had stopped, and that his scars had not gotten any better since some 30—60 days after the accident. (R.R. at 17a.) Whether disfigurement is permanent or temporary is purely a question of fact, *Deppenbrook*, and the permanence and seriousness of a scar can be determined on view. *Purex; Koppers*. Where, as here, both the WCJ and the WCAB viewed Claimant's scars and determined them to be serious, unsightly and permanent, the WCJ's finding of permanence is supported by substantial evidence.

██ The City also maintains that, because a claimant has an affirmative burden to prove that his disfigurement is not usually incident to his employment, Claimant's proof is deficient as a matter of law because he failed to introduce *any* evidence to meet this burden. Again, we disagree.

We previously considered this issue in *Pittsburgh Forgings Co. v. Workmen's Compensation Appeal Board*, 56 Pa.Cmwlth. 150, 424 A.2d 965 (1981). In that case, two claimants, employed as hot press operators or "trimmers" in the employer's forge shop, alleged that they were disfigured as a result of "hot scale" flying off the metal into the surrounding area during the forging and trimming process. The employer's defense was that this form of injury was usually incident to the employment and, thus, was not compensable under section 306(c)(22) of the Act. The evidence in *Pittsburgh Forgings* established that trimmers are exposed to hot flying scale and are burned as a result; however, we concluded that, while burns possibly were incident to the employment of these claimants, not all burns involve scars; thus, where "disfigurement," as opposed to burns, is not incidental to the work, compensation is not precluded under the Act. In view of the testimony offered[7] and the fact that the employer offered no affirmative evidence to show that disfiguring scars, not just burns, are the usual result of such work, we declined to say that the referee's finding was unsupported by substantial evidence and sustained the award of benefits in both cases.

6. Claimant was injured on January 13, 1994 and the WCJ viewed Claimant's scars at the hearing on May 20, 1994, a little over four months later. Although the record before us does not provide the exact date on which the WCAB subsequently viewed Claimant, we note that the WCJ issued her order and opinion on July 31, 1995, and the City filed its appeal from that decision with the WCAB on August 14, 1995, (R.R. at 2b), nineteen months after Claimant's injury. Thus, we know that the WCAB viewed Claimant's scars at least nineteen months after Claimant sustained them.

7. In the case of the first claimant in *Pittsburgh Forgings*, we found substantial evidence to support the finding that disfigurement was not incidental to a trimmer's work in the form of cross-examination testimony of the plant superintendent. The superintendent stated that, although he had been burned many times, he was not

scarred, and that some people are scarred from their burns while others are not. We recognized that the claimant had filed three previous claims for compensable disfigurement; however, giving him the benefit of the most favorable inferences to be drawn from the evidence, we concluded that there was substantial evidence to support the fact that scarring is *not* a usual result of the work.

The evidence in the second claimant's case consisted of the claimant's own testimony. Although he had filed claim petitions for alleged disfigurements on six other occasions, we found substantial evidence for the referee's finding that disfigurement is not usually incident to the employment from the claimant's statement that he was not burned and scarred "all that frequently" because exposure to the flying scale varied depending on a variety of circumstances.

There is no denying that, as a firefighter, Claimant risks being burned as a consequence of his employment. However, we note that, as in *Pittsburgh Forgings,* the City offered no affirmative evidence to show that disfiguring scars, not just burns, are the usual result of such work. Moreover, Claimant testified that, in his more than four years as a firefighter for the City, he had never before filed a claim for disfigurement, (R.R. at 10a, 17a), thereby providing evidence from which the WCJ could find that disfigurements are not usually incident to his employment. Because Claimant, as the party who prevailed below, is entitled to the benefit of the most favorable inferences to be drawn from the evidence, *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa.Cmwlth. 590, 377 A.2d 1007 (1977), we cannot say that the WCJ's finding was unsupported by substantial evidence.

■ Finally, the City submits that it was clear error for the WCAB to affirm the award of sixty-one weeks of disfigurement benefits since Claimant's scarring is simply not serious enough to warrant such an award, which is clearly excessive and outside the range that most WCJ's would have selected. The City acknowledges that the WCJ enjoys considerable latitude in evaluating the extent of an award in disfigurement cases, with the ability to award any amount up to a maximum of two hundred seventy-five weeks, depending upon the severity of the disfigurement. However, the City reminds us that the WCJ must exercise this discretion in a reasonable fashion, and asserts that, because the WCJ has arbitrarily and capriciously disregarded the evidence in this case, we must decrease or vacate the award.

In *Hastings Industries v. Workmen's Compensation Appeal Board (Hyatt),* 531 Pa. 186, 611 A.2d 1187 (1992), our supreme court determined that the translation of disfigurement into monetary compensation was a legal question as much as a factual one and, thus, was subject to review by the WCAB on the basis of its own view of the claimant. In that case, the court held:

> if the WCAB concludes, upon a viewing of the claimant's disfigurement, that the referee capriciously disregarded competent evidence by entering an award significantly outside the range most referees would select, the WCAB may modify the award as justice may require.

*Id.* at 192, 611 A.2d at 1190. Here the WCAB clearly recognized its scope of review in this matter and its ability to modify the WCJ's award as justice may require to make it uniform with similar disfigurement awards. However, having viewed Claimant's disfigurement for itself, the WCAB specifically concluded "that sixty-one (61) weeks of compensation is in line with the range most judges would select." (WCAB op. at 3, R.R. at 30a.) The WCAB did not err in reaching this determination. *See LTV Steel.*

■ As a final matter, we must consider Claimant's request for reimbursement of his counsel fees and costs pursuant to Pennsylvania Rule of Appellate Procedure 2744, based on his claim that the City's appeal was frivolous.[8] In support of his position, Claimant relies on *Phillips v. Workmen's Compensation Appeal Board (Century Steel),* 680 A.2d 45 (Pa.Cmwlth.1996), in which we deemed an appeal frivolous and assigned counsel fees because the sole basis of the appeal was a challenge to the WCJ's credibility determination between conflicting medical evidence, which is not reversible.[9] Claimant

8. Under Pa. R.A.P. 2744, this court may award reasonable counsel fees and delay damages upon a determination that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious, and we may remand to the trial court to determine the amount of damages so authorized. An appeal is frivolous if it presents no justiciable question and is readily recognizable as devoid of merit in that there is little prospect for success. *Department*

*of Transportation, Bureau of Driver Licensing v. Moran,* 159 Pa.Cmwlth. 655, 634 A.2d 677 (1993).

9. In *Phillips,* a claimant petitioned this court for review of a WCAB order affirming a WCJ's denial of the claimant's petition for compensation. The WCJ had credited the opinion of the employer's medical witness that the claimant was not disabled, and the WCAB affirmed because the WCJ's findings were supported by the substan-

maintains that here, as in *Phillips*, the City raises the identical issues before this court that were raised before, and properly rejected by, the WCAB. In this regard, Claimant asserts that, as in *Phillips*, the City essentially questions the WCJ's credibility determination of Claimant's testimony, which provides substantial evidence to support the WCJ's findings that Claimant's disfiguring scars were work-related and not usually incident to his employment. As to the need for medical testimony to support the WCJ's finding of permanence, Claimant points out that the City admitted that such evidence was not necessarily required and, in fact, the City was aware that the WCAB's viewing of Claimant more than a year and a half after the injury was well within the City's own guidelines for a determination of permanence absent medical evidence. Finally, Claimant contends that the City had no basis to continue to challenge the WCJ's award of benefits as excessive once the WCAB had re-viewed Claimant and concluded that the award was in line with the range most other WCJ's would select. However, in a case which is as close as the one confronting us here and which is so dependent upon personal judgments, we cannot agree with Claimant that the City's defense was unreasonable and its appeal frivolous.

Accordingly, we affirm the WCAB's order granting sixty-one weeks of benefits for disfigurement, but we deny Claimant's request for assessment of reasonable counsel fees and costs against the City.

### ORDER

AND NOW, this 13th day of March, 1997, the order of the Workmen's Compensation Appeal Board, dated July 3, 1996, is hereby affirmed. Derrick Harvey's request for assessment of reasonable counsel fees and

costs against the City of Philadelphia is denied.

---

tial, competent and credible testimony of that medical expert. On appeal to this court, the claimant raised the identical issue it raised before the WCAB; that is, whether the WCJ's findings were supported by substantial evidence. We agreed with the WCAB that the findings were supported by substantial evidence in the form of the doctor's credible testimony. The employer sought reimbursement of its counsel fees pursu-

ant to Pa. R.A.P. 2744, claiming that the appeal was frivolous. The employer argued that credibility determinations are not reversible and, because the sole basis of the claimant's appeal was that substantial evidence did not support the credibility determination, the appeal was without foundation. We agreed and granted the request for an assessment of reasonable attorney's fees.