**ALLEGHENY LUDLUM STEEL CORPORATION, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (EVANS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 2, 2002.
Decided Sept. 5, 2002.

Michael A. Cohen, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

BEFORE PELLEGRINI, J., LEAVITT, J., and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Allegheny Ludlum Steel Corporation (Employer) appeals from a decision of the Workers' Compensation Appeal Board (Board) reversing the Workers' Compensation Judge's (WCJ) decision granting its petition to modify the compensation benefits of David Evans (Claimant) under the Workers' Compensation Act (Act).[1]

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

On December 26, 1997, Claimant, a machinist for Employer, injured his left shoulder at work when he lost his balance coming down stairs and grabbed a banister. A notice of compensation payable was issued, and Claimant began receiving benefits on March 6, 1998, when he underwent surgery on his shoulder. On December 3, 1998, Employer filed a modification petition alleging that as of November 16, 1998, a job had been offered to Claimant that was within the medically imposed restrictions.

In support of its petition, Michael Volpe (Volpe), Employer's safety supervisor and administrator of the workers' compensation program, testified that he received medical reports concerning Claimant's condition. He then sent Claimant a letter dated November 11, 1998, offering Claimant a position in the "light-duty crew," and that this position would accommodate the work restrictions due to his injury placed on him by Graham F. Johnstone, M.D. (Dr. Johnstone), his treating physician. Volpe provided a one-page summary by Dr. Johnstone outlining those work restrictions.[2] Volpe testified that the position offered to Claimant was a "rehab laborer" position that was indicated in the letter as job class 2, day shift work, and that Claimant never returned to work after the November 11, 1998 letter. On cross-examination, Volpe testified that he didn't specify a particular job or a particular department in his November 11, 1998 letter, but that Claimant would have been assigned to the light-duty department and would have done whatever jobs were available on that particular week.

Employer presented the expert medical testimony of Dr. Johnstone and Jon B. Tucker, M.D. (Dr. Tucker), both board-certified in orthopedic surgery. Dr. Johnstone testified that he treated Claimant for his right shoulder injury and performed arthroscopic surgery on March 6, 1998, and that Claimant's recovery progression was slow. Dr. Johnstone testified that another arthroscopic surgery was performed on April 2, 1999, and that after physical therapy, Claimant could return to work in a light-duty capacity. Dr. Tucker testified that he saw Claimant on one occasion on September 29, 1998, and found that Claimant had work-related residual shoulder impingement syndrome, and that non-work-related underlying neurologic condition contributed in delaying recovery, but that Claimant would be capable of returning to work with light-duty limitations.

In opposition, Claimant testified that he continued working until February 26, 1998, that he underwent arthroscopic surgery on his right shoulder but was unable to return to his job as a machinist due to constant pain and a decreased range of motion. Claimant also testified that he was also being treated for pulmonary problems and had difficulty with motor functions in his legs, but that these conditions were not related to the work-related injury and that he suffered from a non-work-related left shoulder injury with severely limited motion. He also acknowledged that he received a letter dated November 11, 1998,

---

2. The letter provided in pertinent part that:

Dr. Johnstone, who has been treating you for your shoulder injury, which occurred on 12/26/97, has released you for light-duty work. By this letter, Allegheny Ludlum is offering you work in the light-duty crew. Your work assignments will be made in accordance with the restrictions outlined by Dr. Johnstone.

This position is paid at the rate established for Job Class–2, ($15.21/hr). Your shift will be the Daylight Shift, and will be a 40–hour workweek. This job will begin on November 16, 1998. Please call the Dispensary to arrange a time for a return to work physical. Please be prepared to report for work immediately following the physical.

from Volpe regarding his return to work, but that he did not return to work following the letter because he had never performed light-duty work for Employer.

Claimant also presented the testimony of Walter James Hill (Hill), a grievance representative for the union bargaining unit, who testified that the light-duty agreement with Employer in place since 1970 provided that when employees returned to work after having been injured but had not fully recovered so as to be able to return to their prior position, they worked in the "light-duty crew"—usually in the janitorial department. Hill testified that after receiving the return to work letter, Claimant came to see him and Hill called Volpe to discuss the letter. Hill testified that he had several conversations with Volpe and asked him what job was being offered to Claimant but Volpe only responded by saying that they would find a job for Claimant. On cross-examination, Hill testified that it was his understanding that an effort was made to bring people back to the department that they previously had worked in if that was possible.

Finding the testimony of Dr. Johnstone, Dr. Tucker and Volpe credible and rejecting the testimony of Claimant and Hill that was in conflict with the accepted testimony and finding that "the claimant was properly notified by the November 11, 1998 letter of specific work being available to him within the restrictions of Dr. Johnstone for which the claimant, in bad faith, has not accepted," the WCJ granted the modification petition. Claimant appealed to the Board. Concluding that an appropriate position had not been offered to Claimant because the November 11, 1998 letter did not provide sufficient notice because it

lacked a description of the duties of the job, the Board reversed the WCJ. This appeal followed.[3]

Employer now contends that the Board erred in reversing the WCJ's decision because the referral letter does not have to contain information relating to job duties as long as the employee can make an informed decision regarding whether the position comports with his medical restrictions. It argues that because the light-duty agreement with Claimant's unit specified that Claimant would work in the "light-duty crew" and because Hill, acting as Claimant's labor representative, had numerous discussions regarding the available job, Claimant was fully informed that the job would be within his physical limitations.

■■■ Under the test enunciated in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), for a claimant's benefits to be modified because suitable alternative employment was offered, the following four prongs must be met:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

**3.** Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Sheridan v. Workers' Compensation Appeal Board (Anzon)*, 713 A.2d 182 (Pa.Cmwlth.1998).

4. If the referral fails to result in a job then claimant's benefits should continue. *Id.* at 252, 532 A.2d at 380. The only issue involved in this case is whether the second prong of this test has been met; specifically whether the description of the work Claimant was going to be performing that was identified in the November 11, 1998 letter was sufficient to provide him with notice of an open job within his medical clearance.

Our Supreme Court has recently expounded upon the requirements of this second prong in *Eidem v. Workers' Compensation Appeal Board (Gnaden–Huetten Memorial Hospital),* 560 Pa. 439, 746 A.2d 101 (2000), which involved a similar set of facts to those presented here. In that case, the employer sent the claimant a letter regarding her return to work in a light-duty capacity stating that "a 'temporary position' was available and enumerated the restrictions placed upon her physical exertion and the number of hours each day and week claimant would be expected to work. The letter also specified the rate of pay claimant would receive and directed the claimant to contact employer's director of nursing to arrange her work schedule." *Id.* at 442–443, 746 A.2d at 103. Although the letter did not contain a specific job title or specific duties, the employer argued that it demonstrated available work as required under *Kachinski.* The claimant made similar arguments as Claimant makes here, including that there was insufficient information for her to make an informed decision about employment, and she could not learn anything about the offered job because she had never worked in a temporary position with the employer before. In holding that the job offer was sufficient, our Supreme Court held that:

It is well-settled that in order to satisfy this second prong of *Kachinski* the employer must make a referral to a job position that is actually available. *Kachinski,* 532 A.2d at 379. "It is enough that the employer produce medical evidence describing the claimant's capabilities, and vocational evidence classifying the job, e.g., whether it is light work, sedentary work, etc., along with a basic description of the job in question." *Id.* It is clear that the employer need not specify every aspect of the job in question, since in *Kachinski* this court explicitly rejected such a hypertechnical approach to reviewing these referrals. *Id.* **Rather, the referral should be reviewed in a common sense manner in order to determine whether a suitable position has been made available to the claimant.**

\* \* \* \*

First, the claimant must be reasonably apprised of the job duties and classification, either through prior work experience or through expressly delineating these factors in the letter. Second, the claimant must be given sufficient information in order to determine whether the available position is within her physical restrictions. Only then has employer met its burden of proof pursuant to the second prong of *Kachinski* since claimant has been provided with sufficient information to make an informed decision regarding whether the available position is within her capabilities.

*Id.* at 445–446, 746 A.2d at 104–05 (Emphasis added).

In this case, Claimant was a member of a union that had a collective bargaining agreement with Employer that provided for a "light-duty crew" which had been part of that agreement since 1970. Claimant had worked for Employer for over thirty years, and while he never previously worked in the light-duty program, he was well aware of the program as evidenced by the fact that he brought the November 11,

1998 letter to Hill, his collective bargaining agent, who then discussed Claimant's return to work numerous times with Volpe. While there was no specific job in mind for Claimant, it was clear that in accordance with the collective bargaining agreement, the job proffered would be part of the light-duty department and would be within his physical capabilities. Despite the lack of a specific job description, just as in *Eidem*, considering that the light-duty program was part of the long-standing collective bargaining agreement coupled with the November 11, 1998 letter, Claimant should have reasonably assumed that the position offered by Employer would place him in the light-duty department and that he would perform only those jobs within his physical capabilities.

Accordingly, because Employer met the four-prong *Kachinski* test, the Board's decision is reversed and the decision of the WCJ is reinstated.

### ORDER

AND NOW, this *5th* day of *September*, 2002, the decision of the Workers' Compensation Appeal Board dated February 25, 2002, at A00–2230, is reversed and the decision of the WCJ is reinstated.