# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diamond Manufacturing Company,   :
  :
          Petitioner   :
  :
       v.   :   No. 665 C.D. 2015
  :
Workers' Compensation Appeal   :   Submitted: November 25, 2015
Board (Archavage),   :
  :
          Respondent   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge[1]
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**           **FILED: April 11, 2016**

Diamond Manufacturing Company (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying Employer's Petition to Terminate (Termination Petition) and Petition to Suspend or Modify (Suspension/Modification Petition) the workers' compensation (WC) benefits of Steven Archavage (Claimant). On appeal, Employer argues that the Board erred in affirming because: (1) the WCJ's decision failed to address all of the evidence necessary for a reasoned decision as required by Section 422(a) of the Workers'

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

Compensation Act[2] (Act) and failed to explain why uncontroverted evidence favorable to Employer was rejected, which is explained, at least in part, by the WCJ's bias against Employer; (2) the WCJ did not consider all of the evidence pertaining to Employer's job offer to Claimant when denying the Suspension/Modification Petition; and (3) the WCJ should not have imposed litigation costs against Employer. Because we conclude that the WCJ did not exhibit bias and issued a reasoned decision denying Employer's Petitions that is supported by substantial evidence, we affirm.

## I. Background

### a. Work Injury and Petitions

On February 14, 2012, Claimant sustained an injury while at work, which Employer accepted as "a low back sprain/strain, a bulging disc at L3-4 and a herniated disc at L4-5 with radiculopathy" via "an Agreement For Compensation For Disability Or Permanent Injury" (Agreement for Compensation).[3] (WCJ Decision, Findings of Fact (FOF) ¶ 2.) Claimant sought treatment from his board-certified family physician, Alan Boonin, M.D., in March 2012, who prescribed pain medications, referred Claimant to physical therapy, and sent Claimant to various specialists, including two neurosurgeons and a physiatrist for pain treatment. Claimant underwent numerous diagnostic tests on his lumbar spine, including two MRIs, a CT scan, an x-ray, and an EMG of his lumbar spine and legs. Claimant was removed from work at the beginning of March 2012, and Dr.

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 834.
[3] Claimant initially filed Claim and Penalty Petitions, which were resolved by the Agreement for Compensation and dismissed by the WCJ in an order dated November 29, 2012.

Boonin, who is still treating Claimant's work injuries, has not released Claimant to work.

At Employer's direction, Claimant underwent an Independent Medical Examination (IME) with Thomas DiBenedetto, M.D., a board-certified orthopedic surgeon, on March 12, 2013. Dr. DiBenedetto issued a report and Physician's Affidavit of Recovery opining that, based on his examination of Claimant and Claimant's medical records, Claimant was fully recovered from his work-related injuries. Employer filed the Termination Petition on April 30, 2013 based on Dr. DiBenedetto's opinion of full recovery. The Termination Petition was assigned to the WCJ, and hearings were scheduled.

On July 15, 2013, Employer filed a request with the WCJ to amend the Termination Petition to include the suspension and/or modification of Claimant's benefits. The WCJ reviewed the motion and attachments, denied the request to amend because "it [was] in no way clear based upon the documentation" that amendment was appropriate, but advised Employer that it could file separate petitions that would properly apprise Claimant of the relief sought. (Letter from the WCJ to Counsel and Claimant's Counsel (July 24, 2013), Employer's Motion to Recuse Ex. H.)

By letter dated July 30, 2013 (Letter), Employer's Controller (Controller) "offered Claimant a full-time light[-]duty position rocklinizing die blocks." (FOF ¶ 6.) The Letter indicated that "the position was available [for] forty (40) hours per week and would pay $13.14 per hour and Claimant was scheduled to start on August 12, 2013." (FOF ¶ 6.) This position would involve Claimant "sitting at a desk, holding a pencil like hand tool, using either the right or left hand, to put a small bead of metal inside a hole in [the] die blocks to prevent scrap from coming

3

back to the surface through the hole after it was punched." (FOF ¶ 6.) The tool Claimant would use weighs approximately one pound, and Claimant could sit or stand to perform the work.

Claimant did not return to work, and Employer filed the Suspension/Modification Petition on August 12, 2013 asserting that: Claimant was fully recovered and could return to unrestricted work; it had offered Claimant a specific light-duty job without loss of income and benefits; and Claimant did not return to work. Employer included the Notice of Ability to Return to Work (Notice), dated April 5, 2013, in its May 28, 2013 hearing submissions and the Letter; however, because Employer was not, at the time, seeking to suspend or modify Claimant's benefits due to the offer of a specific job, the WCJ returned the documents to Employer. (Hr'g Tr., May 28, 2013, at 8-9, R.R. at 206a-07a.) Claimant filed answers denying the material averments of all Petitions. Employer requested that the petitions be consolidated for the upcoming evidentiary hearing scheduled for August 27, 2013.

### b. Motion to Recuse

Employer filed a motion seeking the WCJ's recusal (Motion to Recuse) based on, *inter alia*, the belief that the WCJ would not render an impartial decision because he was biased against Employer and Employer's Counsel (Counsel). The Motion to Recuse was argued at the August 27, 2013 hearing. Counsel, whose office is in Pittsburgh, had requested to participate in the initial fifteen minute hearing by telephone rather than in person in Wilkes-Barre.[4] However, the WCJ

---

[4] Counsel indicated that he had read the WCJ's Procedural Questionnaire and, per that information, the first hearing typically involved only procedural matters and that the WCJ considered requests to participate by telephone on a case-by-case basis.

denied this request, and Employer alleged that the WCJ: did not provide an explanation regarding when participation by telephone would be granted; characterized the request as being solely because Counsel did not want to travel to Wilkes-Barre, rather than recognizing that it was an attempt to reduce Employer's litigation costs; used a condescending tone and interrupted Counsel during the May 28 hearing when they were discussing Counsel's prior request to participate by telephone; did not permit Employer to amend its Termination Petition to include the Suspension/Modification Petition; and threatened sanctions against Employer and its Counsel for not attending a mandatory mediation, which Employer and its Counsel had determined would have been futile. After an exchange between the WCJ and Employer's Counsel, which encompasses 55 pages of transcript, (Hr'g Tr., August 27, 2013, at 15-58, R.R. at 243a-86a), the WCJ denied the Motion to Recuse. Although he had threatened to sanction Employer for the failure to appear at the mediation, the WCJ did not impose sanctions.

## II.   WCJ's Decision and Board Opinion

Following the WCJ's ruling on recusal and sanctions at the August 27, 2013 hearing, the parties offered evidence to support their respective positions. Employer presented documentary evidence, Dr. DiBenedetto's deposition testimony, and Controller's live testimony regarding the job offer. Dr. DiBenedetto described the history of Claimant's work injury, Claimant's treatment, and Claimant's current complaints regarding those injuries. Dr. DiBenedetto reviewed the various diagnostic studies, including the MRI films of Claimant's low back, and indicated that those studies revealed degenerative disease of Claimant's lumbar spine and a disc protrusion at L4-5, but contained no evidence of root compression. He performed a physical examination on Claimant,

5

which, *inter alia*, "revealed that Claimant[:] was in mild distress; . . . was unable to straighten up; . . . walked with his spine flexed and his knees bent; . . . [has] tenderness in the midline of his lumbosacral junction, the left buttocks and the sciatic notch"; lacked reflexes in both his legs; and has increased back pain on the right when his left hip was moved. (FOF ¶ 14.) Dr. DiBenedetto stated that "his physical examination would not explain Claimant's symptoms . . . and [he] could not explain why Claimant had a limited range of motion of his lumbar spine or why Claimant was unable to straighten up." (FOF ¶ 14.) Dr. DiBenedetto discounted the results of the EMG study that revealed lumbosacral radiculopathy because the report did not indicate at what level it was taken. (FOF ¶ 14; DiBenedetto's Dep. at 31-32, R.R. at 444a-45a.) Dr. DiBenedetto believed that his opinions were consistent with those of the neurosurgeons Claimant had seen, Philip Hlavac, M.D., and John Cantando, D.O., whose records were included in Claimant's medical records. (DiBenedetto's Dep. at 23, R.R. at 436a.) Dr. DiBenedetto opined that Claimant was fully recovered from his work-related injuries and capable of returning to unrestricted work. (FOF ¶ 14; DiBenedetto's Dep. at 18-19, R.R. at 431a-32a.) On cross-examination, Dr. DiBenedetto acknowledged that there were numerous findings listed in the objective study reports, such as a "small central focal annular tear" at L4-5 with "mild stenosis of the central spinal canal and neuroforamina" and "a minimal posterior central dis[c] bulge" with "mild stenosis of the central spinal canal" at L3-4, that he did not include in his own report because he did not consider them important or key. (FOF ¶ 15; DiBenedetto's Dep. at 27-31, 46, R.R. at 440a-44a, 459a.)

Controller testified that Employer offered Claimant the light-duty job based on Dr. DiBenedetto's release and that he had sent Claimant the Letter. Controller

described the light-duty job as the only light-duty position Employer has, and that Claimant would have the option of sitting, kneeling on a chair, or standing as he wished. Controller acknowledged that the wages offered in the Letter were less than Claimant's average weekly wage, but stated that Claimant could earn more money if he worked in other positions and/or overtime, worked a different shift to earn shift differential, and if he received available bonuses. Controller acknowledged that there was no "guarantee that Claimant would have received a bonus." (FOF ¶ 11; Hr'g Tr., October 1, 2013, at 36-37, R.R. at 366a-67a.) Employer also offered two surveillance videos purporting to show Claimant on two occasions walking, carrying items (a small bag and a case of beer), and getting into his vehicle and driving without any physical difficulty. However, upon viewing the video, the WCJ found that it showed Claimant "walking with some difficulty and with an altered gait, slightly bent forward at the waist" and was "actually consistent with Claimant's own testimony." (FOF ¶ 13.)

Claimant presented Dr. Boonin's deposition testimony and Claimant's live testimony in opposition to the Petitions. Dr. Boonin described the history of Claimant's injury and treatment, as well as Claimant's current condition and future treatment plans. Dr. Boonin indicated that the results of the MRI studies showed an L3-4 disc bulge and "a central disc protrusion at L4-5, which is consistent with [Claimant's positive] straight leg raise test, as well as a small central focal an[n]ular tear." (FOF ¶ 15.) When Claimant's pain did not go away with medication and physical therapy, Dr. Boonin sent Claimant to undergo an EMG, which demonstrated lumbosacral radiculopathy, and to a pain specialist. Dr. Boonin stated that a subsequent CT scan confirmed the MRIs and noted "encroachment of the neural foramina, which was consistent with the positive

7

EMG study." (FOF ¶ 15.) He further testified that Claimant's symptoms, including a persistent spasm in his low back, were consistent with the diagnostic studies, particularly the irritation at L4-5. Dr. Boonin reviewed the light-duty position Employer offered Claimant and believed that Claimant was not capable of returning to work at that position due to his work-related injuries. Dr. Boonin indicated that, if the current round of injections were unsuccessful, Claimant would undergo a discogram and possible lumbar fusion surgery. According to Dr. Boonin, Claimant was not fully recovered from his work-related injuries and continues to have radiculopathy on physical examination.

Claimant testified live, describing how he was injured, his treatment history, and current complaints. Claimant indicated that he had not experienced relief with the injections and that fusion surgery may be a possibility if other measures are unsuccessful in relieving his pain. He stated that his medicines cause him to become light-headed, dizzy and nauseous, and he experiences pain with walking, bending, and sitting. Claimant explained that he "experiences lower back pain, which comes down around his hips into his buttocks and down the front of his legs to his knees," and he did not think he could return to work at the light-duty position in his current condition. (FOF ¶ 12.)

The WCJ made the following credibility determinations. Based on his observances of Claimant's bearing and demeanor, the WCJ found Claimant's testimony genuine and credible and accepted it as fact. The WCJ did not credit Controller's live testimony, noting that while he did "not believe [Controller] was being intentionally deceptive," the WCJ found "it strangely convenient that despite the clear and specific language contained in the job offer letter itself, [Controller] testified that Claimant would have been brought back without a loss in earnings."

8

(FOF ¶ 11.) The WCJ observed that Controller's testimony conflicted with the information in the Letter and was speculative as to the possibility of the bonuses available to Claimant. Finally, the WCJ was "unimpressed by [Controller's] testimony concerning what Claimant could have earned if he worked more hours," or on a different shift or job classification than was offered in the Letter, "especially when [Controller] testified that the position that was offered to Claimant . . . was the only light[-]duty position . . . available." (FOF ¶ 11.) Thus, the WCJ found that "[b]ased solely upon the information contained in the . . . [L]etter itself, Claimant would earn $525.60 per week if he had returned to work in this position, which is substantially lower than his $680.48 average weekly wage." (FOF ¶ 6).

With regard to the medical experts, the WCJ found Dr. Boonin's testimony to be more credible and where Dr. DiBenedetto's testimony conflicted with Dr. Boonin's testimony, the former was specifically rejected and the latter was specifically accepted. The WCJ explained that he

> was persuaded in part by the consistency between Claimant's testimony and Dr. Boonin's testimony, and in part by the consistency between Dr. Boonin's findings on examination with the findings of the diagnostic studies. Furthermore, Claimant's complaints have been consistent since the work-related injury, yet Claimant had no such symptoms prior to the work-related injury. In this regard, Dr. Boonin demonstrated that he was much more familiar with Claimant's physical condition, having benefited from seeing the Claimant before and after the work-related injury, whereas Dr. DiBenedetto examined Claimant on only one isolated occasion. Unlike Dr. Boonin, who correlated Claimant's complaints with the findings on examination and in the diagnostic studies, Dr. DiBenedetto chose to disregard Claimant's subjective complaints. As Dr. Boonin credibly pointed out, Claimant's subjective symptoms are consistent with the findings on the MRI studies, the findings of the EMG study and the findings on the [CT] study. Dr. Boonin's opinions are logical and internally consistent.

(FOF ¶ 16.)

Based on the credited evidence, the WCJ found that Claimant was not fully recovered from his work-related injuries and remains totally disabled as a result thereof. Accordingly, the WCJ denied the Termination Petition reasoning that Employer did not meet its burden of proving full recovery. The WCJ consolidated the Suspension/Modification Petition with the Termination Petition, but denied the Suspension/Modification Petition because Employer did not meet its "burden of establishing that Claimant is capable of returning to work with [or without] a loss in earnings based upon the credible testimony of Claimant and Dr. Boonin." (WCJ's Decision, Conclusions of Law (COL) ¶¶ 3-4.) The WCJ concluded that Employer had a reasonable basis for contesting the Termination Petition. (COL ¶ 5.) However, the WCJ found that

> [a]lthough there was a reference to a Notice . . . at the hearing on May 28, 2013, during the discussion of [Employer's] supersedeas evidence relative to [Employer's] request for supersedeas in conjunction with [its Termination Petition], [Employer has] not provided any evidence establishing that any Notice . . . was provided to Claimant prior to the subject job offer by [Controller].

(FOF ¶ 9.) Therefore, the WCJ concluded that Employer did not establish "a reasonable basis for contest of [its Suspension/Modification] Petitions since [Employer] ha[s] not presented any evidence that a Notice . . . was properly provided to Claimant prior to the job being offered." (COL ¶ 6.) While ordinarily this would require Employer to pay Claimant's attorney's fees under Section 440(a) of the Act,[5] Claimant's counsel did not provide quantum meruit fee

---

[5] Added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 996(a).

10

evidence and Claimant had not paid any fees to his counsel to date. (COL ¶ 6.) Finally, the WCJ directed Employer to reimburse Claimant for $3,624.18 in litigation fees. (COL ¶ 7.)

Employer appealed, challenging the WCJ's Decision on the grounds that Employer had presented substantial competent evidence that supported the conclusions that Claimant was fully recovered from his work-related injuries and could return to work at the light-duty position offered by Employer without a loss of wages that was omitted from the WCJ's Decision. Employer contended that the WCJ's erroneous findings of fact and conclusions of law were caused, at least in part, by his refusal to recuse from the proceedings. Thus, Employer argued that the WCJ's Decision was not reasoned and should be reversed.

After setting forth the relevant law, the Board reviewed the record and the WCJ's credibility determinations. It found that the WCJ did not disregard overwhelming evidence and had issued a reasoned decision under Section 422(a) of the Act that was supported by substantial evidence. The Board noted that, because Claimant testified live, the WCJ's conclusion that he was credited was sufficient and that the WCJ provided multiple reasons for accepting Dr. Boonin's testimony over that of Dr. DiBenedetto. The Board "discern[ed] no material misapprehension or irrational flaw in the WCJ's credibility determinations, as required by Casne [v. Workers' Compensation Appeal Board (STAT Couriers, Inc.), 962 A.2d 14 (Pa. Cmwlth. 2008).]" (Board Op. at 6.) According to the Board, Dr. Boonin's credited testimony constituted substantial competent evidence that supported the WCJ's findings that Claimant was not fully recovered and could not perform the job offered by Employer. The Board disagreed with Employer's contention that the WCJ's Decision was based on the WCJ's bias or personal

11

animus against Counsel, and it found no abuse of discretion by the WCJ in hearing the matter. The Board concluded that, because the WCJ's Decision met the reasoned decision standard and there was no capricious disregard where the WCJ expressly considered and rejected the evidence before him, it could not "agree with [Employer's] contention that the only explanation for the WCJ's [D]ecision in Claimant's favor is bias and personal animus directed toward defense counsel and/or [Employer]." (Board Op. at 7.) The Board observed that "[a]dverse rulings do not constitute bias. Dow v. [Workers' Compensation Appeal Board] (Household Finance Co[mpany]), 768 A.2d 122[1, 1225] (Pa. Cmwlth. 2001)." (Board Op. at 7.) Therefore, the Board affirmed the denial of the Termination and Suspension/Modification Petitions. Employer now petitions this Court for review.[6]

### III. Discussion
> *a. Whether the WCJ demonstrated bias thereby rendering his decision to be not reasoned under the Act.*

Employer argues that the WCJ's refusal to recuse has "laid the foundation for his arbitrary and capricious decision." (Employer's Br. at 6.) As it did before the Board, Employer argues that the WCJ's decision was not reasoned as required by Section 422(a) of the Act because it did not address substantial, competent evidence that weighed heavily in Employer's favor, at least in part, based on the WCJ's bias. As examples, Employer points to the facts that: while the WCJ accepted Claimant's testimony that his medications make him, *inter alia*, dizzy and lightheaded, the WCJ did not mention the fact that Claimant continues to operate a

---

[6] "Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.), 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

12

motor vehicle despite these alleged symptoms; and the WCJ credited Dr. Boonin "**solely** because Dr. DiBenedetto had only examined the Claimant during the IME, whereas Dr. Boonin had examined the Claimant on more than one occasion." (Employer's Br. at 34 (emphasis in original).)  Employer describes additional evidence addressing its Termination and Suspension/Modification Petitions, such as Dr. Boonin's cross-examination testimony and Controller's testimony regarding the availability of bonuses and overtime, which it contends the WCJ ignored or disregarded without explanation.  Employer contends "that a reasonable, unbiased person would otherwise deem [that evidence] worthy to at least analyze even if that evidence is ultimately not deemed credible."  (Employer's Br. at 30.)  Employer maintains that it is not arguing that the decision should be reversed on credibility. Instead, Employer contends that the WCJ failed to set forth all relevant evidence, analyze it and provide logical reasons for accepting or rejecting the evidence.  The WCJ therefore did not issue a reasoned decision, in part, because of the arbitrary and capricious manner in which the WCJ conducted this matter and his bias against Employer and Employer's Counsel.

Section 422(a) of the Act sets forth the "reasoned decision" requirement as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.  The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section.  When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence.  Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the

13

reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834. Our Supreme Court has explained

a decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. . . . [T]he Act requires that, in rendering a reasoned decision in a case with conflicting evidence, the WCJ "must adequately explain the reasons for rejecting or discrediting competent evidence." . . . The point is that, absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review.

Daniels v. Workers' Compensation Appeal Board (Tristate Transport), 828 A.2d 1043, 1052-53 (Pa. 2003) (citing 77 P.S. § 834). The reasoned decision requirement does not, however, require a WCJ to: "discuss all the evidence presented," Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company), 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006); "give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision," Acme Markets, Inc. v. Workers' Compensation Appeal Board (Brown), 890 A.2d 21, 26 (Pa. Cmwlth. 2006); or "set forth in detail the process by which he arrived at such a determination," CPV Manufacturing, Inc. v. Workers' Compensation Appeal Board (McGovern), 805 A.2d 653, 657 (Pa. Cmwlth. 2002). Rather, the WCJ must make findings that are necessary to resolve the issues presented by the evidence and that are relevant to the decision. Dorsey, 893 A.2d at 194 n.4. "It is sufficient that the decision contains findings of fact and conclusions of law, based upon all of the evidence,

14

which clearly and concisely state and explain the rationale for the WCJ's decision." CPV Manufacturing, Inc., 805 A.2d at 657.

A WCJ's findings are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan), 612 A.2d 434, 437 (Pa. 1992). "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.), 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). In any workers' compensation proceeding, the WCJ, as the ultimate fact-finder, is free to resolve conflicts in evidence and to determine the credibility of witnesses. City of Philadelphia, Risk Management Division v. Workmen's Compensation Appeal Board (Harvey), 690 A.2d 1293, 1297 (Pa. Cmwlth. 1997). The WCJ has the authority to accept or reject the opinions of any witness, including medical experts, and we are bound by the WCJ's credibility determinations unless they are made arbitrarily and capriciously. Casne, 962 A.2d at 18-19; Harvey, 690 A.2d at 1297.

"Credibility determinations are more than a series of individual findings"; they involve "the evaluation of a total package of testimony in the context of the record as a whole, and reflect subtle nuances of reasoning that may not be fully articulated, nor even fully appreciated by the fact[]finder." Casne, 962 A.2d at 19. Thus,

> [w]e must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational.

15

Id. The capricious disregard of evidence occurs "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." Id. at 19 n.5 (internal quotation marks omitted). But, the "express consideration and rejection [of conflicting evidence], by definition, is not capricious disregard." Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works), 862 A.2d 137, 145 (Pa. Cmwlth. 2004). The term "arbitrary includes [decisions] founded on prejudice or preference *rather than on reason or fact*." Casne, 962 A.2d at 19 n.5 (emphasis added) (internal quotation marks omitted). Adverse rulings, without more, do not demonstrate the bias required for recusal. Dow, 768 A.2d at 1225.

### i. Termination Petition

Employer asserts that the WCJ's Decision is not reasoned because the WCJ ignored, disregarded, or discredited evidence that was favorable to Employer, at least in part, because he was biased against Employer. Adverse rulings, by themselves, do not demonstrate bias. Id. We have held that the exchange of harsh words does not require recusal or necessarily demonstrate bias or prejudice. In re Hunter, 782 A.2d 610, 613-14 (Pa. Cmwlth. 2001), overruled on other grounds by In re Fry, 110 A.3d 1103 (Pa. Cmwlth. 2015). We appreciate that, given the distance and cost to his client, Employer's Counsel feels that the WCJ did not treat his requests to participate in certain hearings by phone with due consideration. We also recognize that Employer did present evidence which, if credited, could have supported its position. However, we have thoroughly reviewed the record and, specifically, the examples that Employer argues are the result of bias and have found that there are objective reasons to support the WCJ's determinations which

16

are based on substantial evidence. Thus, these determinations are not, under the law, arbitrary or resulting from capricious disregard.[7]

Employer argues that Dr. DiBenedetto's opinions should have been credited over Dr. Boonin's because the former is an orthopedic surgeon and the latter is a family physician and that the WCJ's crediting Dr. Boonin's opinion over those of Dr. DiBenedetto was arbitrary because it was based solely on the fact that the former was Claimant's treating physician and the latter only examined Claimant once. First, there were several objective reasons the WCJ provided for finding Dr. Boonin more credible than Dr. DiBenedetto[8] and that one expert "may have had

_____

[7] While we conclude that there are objective reasons supported by the record that support the WCJ's findings and conclusions in this matter thereby rendering that decision reasoned under the Act, we are troubled by some of the WCJ's actions in this matter. For example, requiring Counsel to drive from Pittsburgh to Wilkes-Barre to attend a fifteen minute procedural hearing appears to be unreasonable, as does the WCJ's comments and attitude during the May 28, 2013 hearing and argument on the Motion to Recuse at the August 27, 2013 hearing. Nonetheless, we observe that, in making his decision, the WCJ was required to consider, within his "individual discretion or conscience," "whether there [was] substantial reasonable doubt as to [his] ability to preside impartially" over the matter. Steinhouse v. Workers' Compensation Appeal Board (A.P. Green Services), 783 A.2d 352, 356 (Pa. Cmwlth. 2001) (internal quotation marks omitted). To successfully challenge the WCJ's determination that he could preside objectively and fairly, Employer would have had to present evidence that "clearly show[ed] prejudice, bias, capricious disbelief, or prejudgment." In re: Hunter, 782 A.2d at 613. While the WCJ may have been high-handed, his actions did not clearly show bias, and we must defer to the WCJ's conclusion that he could decide the matter fairly and impartially.

[8] In crediting Dr. Boonin's testimony over that of Dr. DiBenedetto, the WCJ cited the following objective bases: (1) "the consistency between Claimant's testimony and Dr. Boonin's testimony, and in part by the consistency between Dr. Boonin's findings on examination with the findings of the diagnostic studies"; (2) given the consistency of Claimant's complaints and lack of symptom's prior to the injury, "Dr. Boonin demonstrated that he was much more familiar with Claimant's physical condition, having benefited from seeing the Claimant before and after the work-related injury, whereas Dr. DiBenedetto examined Claimant on only one isolated occasion"; (3) "Dr. Boonin . . . correlated Claimant's complaints with the findings on examination and in the diagnostic studies, [but] Dr. DiBenedetto chose to disregard Claimant's subjective complaints"; (4) "Dr. Boonin credibly pointed out, Claimant's subjective symptoms are consistent with the findings on the MRI studies, the findings of the EMG study and the

*(Continued…)*

17

less interaction with the subject" has been specifically cited by the Supreme Court as sufficient in Daniels, 828 A.2d at 1053. In addition, "[a]n expert medical witness in a workers' compensation proceeding is qualified to testify outside of his medical specialty, and any objection to that testimony goes to the weight of the evidence." Williams, 862 A.2d at 145.

Employer also points to inconsistencies within Dr. Boonin's testimony regarding his interpretation of the reports describing the results of Claimant's diagnostic studies. For example, Dr. Boonin testified that the MRI, CT scan, and EMG reports indicated that: Claimant had a disc bulge at L3-4 with mild stenosis "meaning that there was bone growth into the spinal canal pushing on the nerve at that point"; a central disc protrusion, central focal annular tear, and mild stenosis at L4-5; a bulge at L5-S1; "minimal encroachment into the neural foramina," "[m]eaning that this was pushing on the nerve coming out of that area which I felt was confirmed by his EMG" at L4-5 and L5-S1; and lumbosacral radiculopathy. (Boonin's Dep. at 15, 17, 22-23, 25, R.R. at 490a, 492a, 497a-98a, 500a.) Dr. Boonin opined that Claimant's various symptoms, such as Claimant's positive right straight leg rise, persistent back spasm, and back and leg pain, were consistent with these objective findings. (Boonin's Dep. at 15, 23-25, 41, R.R. at 490a, 498a-500a, 516a.) He further explained that: Claimant was still undergoing treatment, including potentially a discogram and fusion surgery in the future; was not fully recovered from his work-related injuries; and could not return to work. (Boonin's Dep at 30-31, 36-37, 42-44, R.R. at 505a-06a, 511a-12a, 517a-19a.) Although Dr. Boonin acknowledged on cross-examination that the MRI reports did

findings on the [CT] study"; and (5) "Dr. Boonin's opinions are logical and internally consistent." (FOF ¶ 16.)

18

not indicate encroachment on the nerve roots or spinal cord and that one part of the CT scan report indicated that there was not "significant disc herniation or spinal stenosis," he observed that Claimant had an annular tear and that the radiologist also indicated in the CT scan report that there was "mild stenosis central spinal canal at L4-5 and L3-4." (Boonin's Dep. at 48-50, 52-53, R.R. at 523a-25a, 527a-28a.) Following cross-examination, Dr. Boonin indicated that his opinions regarding Claimant's condition had not changed. (Boonin's Dep. at 72, R.R. at 547a.) As a physician, Dr. Boonin's "answers given on cross-examination do not destroy the effectiveness of a physician's opinion given on direct," particularly where the physician does "not alter his original opinion following cross-examination." Coyne v. Workers' Compensation Appeal Board (Villanova University), 942 A.2d 939, 956 (Pa. Cmwlth. 2008). Moreover, a review of the CT scan report indicates that it does reference "mild stenosis of central spinal canal" at L3-4, "minimal encroachment into bilateral neural foramina" and "mild stenosis of the central spinal canal and neural foramina" at L4-5, and "minimal encroachment into bilateral neural foramina" at L5-S1. (August 14, 2012 CT Scan Report at 1, R.R. at 562a.) The two MRI reports likewise identify disc bulges and protrusions at the levels of Claimant's lumbar spine noted by Dr. Boonin and the presence of the "small central focal annular tear" at L4-5. (March 8, 2012 MRI Report, R.R. at 559a-60a; January 7, 2013 MRI Report, R.R. at 564a-65a.) The EMG report states that Claimant is suffering from "[m]ild left lower lumbosacral radiculopathy." (October 23, 2012 EMG Report, R.R. at 566a.)[9]

_____

[9] Moreover, while Employer cites Dr. Cantando's notations indicating that Claimant's low back pain was "out of proportion to his imaging" and "there is no significant [neuroforamina] or spinal stenosis," Dr. Cantando also recognized that Claimant continued to exhibit symptoms, including muscle spasms and an altered gait, and recommended treatment in

*(Continued…)*

19

The WCJ reviewed the entirety of the witnesses' testimony, chose to credit Dr. Boonin's opinions over those of Dr. DiBenedetto, and provided multiple, objective bases for that determination that are supported by the record. The express consideration and rejection of evidence is, by definition, not a capricious disregard thereof. Williams, 862 A.2d at 145. The WCJ provided similar objective and rational bases for his other credibility determinations that are supported by the record and, accordingly, they are not subject to being overruled "unless made arbitrarily and capriciously" or if they are "fundamentally dependent on a misapprehension of material facts." Casne, 962 A.2d at 19. The WCJ made the findings that were necessary to resolve the issues presented by the evidence and that were relevant to his decision, and these findings of fact and conclusions of law were "based upon all of the evidence, [and] clearly and concisely state[d] and explain[ed] the rationale for [his D]ecision." Dorsey, 893 A.2d at 194 n.4; CPV Manufacturing, Inc., 805 A.2d at 657. Accordingly, the WCJ's Decision is a reasoned decision as required by Section 422(a) of the Act.

Employer had the initial burden of proof on the Termination Petition. To terminate benefits, Employer had to demonstrate that either Claimant's disability ceased or that any current disability arose from a cause unrelated to the work injury. Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital), 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). Employer attempted to meet this burden through Dr. DiBenedetto's testimony, but it was not credited. Rather, the WCJ credited Claimant's expert testimony that Claimant had not fully

the form of facet injections from Claimant's pain specialist. (Cantando's Report at 3-5, R.R. at 575a-77a.) Dr. Cantando further recommended that if the facet injections did not work, Claimant should undergo a discogram to determine whether a disc fusion would be beneficial. (Cantando's Report at 4-5, R.R. at 576a-77a.)

recovered from his work-related injuries and could not return to work over the conflicting testimony of Employer's expert. The credited testimony constitutes substantial evidence that supports the WCJ's denial of the Termination Petition.

### ii. Modification/ Suspension Petition

Employer also challenges, on the basis of bias, the WCJ's findings that Employer did not provide Claimant with the Notice and that Employer had no medical opinion placing Claimant on light-duty work restrictions and, therefore, Employer was not entitled to modify Claimant's WC benefits based on his refusal to return to his modified-duty as directed. Employer asserts that it sent Claimant's counsel the Notice, along with Dr. DiBenedetto's IME report and an affidavit of recovery, and presented the same at the May 28, 2013 hearing on the Termination Petition. Employer notes that, at that time, it had not yet filed the Suspension/Modification Petition so the WCJ handed it back to Counsel. Employer subsequently submitted the Notice to the WCJ prior to the August 27, 2013 hearing. Employer further observes that, while it may not have had a release to light-duty work for Claimant, the Notice was based on Dr. DiBenedetto's release of Claimant to full duty work. Thus, Employer contends, the WCJ's findings are additional examples of his bias against Employer.

We agree with Employer that the WCJ's finding that Employer did not have a physician's opinion releasing Claimant to light-duty work, although technically accurate, is not entirely correct because Employer did have Dr. DiBenedetto's report releasing Claimant to *full* duty work on March 12, 2013. We also agree with Employer that the WCJ should have accepted the Notice and other related documents during the May 28, 2013 hearing, particularly given that such

21

documents frequently become relevant in later-filed or amended petitions.  In this regard, we further express our belief that the WCJ erred by not allowing Employer to amend the Termination Petition to include a request for suspension or modification, a generally routine request.[10]  Ultimately, however, even though the WCJ erred in these findings, the WCJ did not deny the Suspension/Modification Petition on these grounds.  The WCJ concluded that Employer had not met its burden for a suspension or modification because Claimant remained totally disabled and could not return to work with or without a loss of earnings.  (FOF ¶ 17; COL ¶¶ 3-4.)  Thus, any error was harmless.

> b. *Whether the WCJ erred in relying only on the Letter when considering the Suspension/Modification Petition.*

Employer next asserts that the WCJ should have looked beyond the four corners of Employer's light-duty job offer and considered Controller's testimony about Claimant's opportunities to increase his pay.  Employer maintains that the WCJ's rejection of Controller's testimony was based on a hypertechnical review of such offers, which has not been sanctioned by the courts.  Allegheny Ludlum Steel Corporation v. Workers' Compensation Appeal Board (Evans), 806 A.2d 508, 511 (Pa. Cmwlth. 2002).  Moreover, Employer contends that the Letter satisfied the necessary requirements for such offers:  it outlined the job duties and classification (sedentary, light, etc.) and provided Claimant with enough information to ascertain whether the position would be within his restrictions.  Eidem v. Workers'

---

[10] While the WCJ did cite these reasons for concluding that Employer's contest of the Suspension/Modification Petition was unreasonable, (COL ¶ 6), the WCJ did not award any attorney's fees for this contest and, therefore, the error was harmless.

Compensation Appeal Board (Gnaden-Huetten Memorial Hospital), 746 A.2d 101, 105 (Pa. 2000).

For a claimant's benefits to be modified because suitable alternative employment was offered, the following four prongs must be met:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company), 532 A.2d 374, 380 (Pa. 1987).[11]  The employer bears the initial burden of proving the first two prongs and, if it does so, the burden then shifts to the claimant to establish that he or she acted in good faith in following through on the job referrals.  Eidem, 746 A.2d at 104.

As noted above, the WCJ denied the Suspension/Modification Petition on the basis that Employer did not prove that Claimant was recovered from his work-

---

[11] Kachinski was superseded, in part, by the 1996 amendments to Section 306(b) of the Act, 77 P.S. § 512, relating to seeking modification or suspension of a claimant's WC benefits based on his or her earning power.  See Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap), 81 A.3d 830 (Pa. 2013) (discussing the amendments to Section 306(b), Kachinski, and the different ways an employer may seek to modify or suspend a claimant's benefits under the Act).

related injuries such that he could return to work either with or without a loss of earnings. (FOF ¶ 17; COL ¶¶ 3-4.) Having already concluded that the WCJ's findings and conclusions in this regard are supported by substantial evidence, Employer has not met the first prong of the Kachinski standard and, therefore, could not meet the requirements to suspend or modify benefits.[12]

### c. Whether the WCJ erred in awarding Claimant litigation costs.

Finally, Employer challenges the award of litigation costs where Employer's contest of its Petitions was reasonable because it presented conflicting medical evidence that should have been accepted by the WCJ.

Section 440(a) of the Act provides, in relevant part, that

> [i]n any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements . . . , the employe . . . in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award of compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That *cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.*

---

[12] Because Employer did not meet the first requirement, we do not need to discuss the other arguments. However, we note that, even if the WCJ had credited Controller's testimony, Employer would not be entitled to a *suspension* of Claimant's benefits because Controller acknowledged that he could not guarantee that Claimant would receive the bonuses which Employer relied upon to make up the difference between Claimant's pre-injury earnings and the wages offered in the Letter. As for the sufficiency of the Letter, we would agree with Employer that the Letter would have been sufficient to *modify* Claimant's benefits because, pursuant to the Letter, "[C]laimant [was] reasonably apprised of the job duties and classification, . . . through expressly delineating th[o]se factors in the [L]etter" and was "given sufficient information in order to determine whether the available position is within [his] physical restrictions," namely the weight of the tool and information regarding Claimant's ability to sit, stand, or do both to perform the duties. Eidem, 746 A.2d at 446.

24

77 P.S. § 996(a) (emphasis added). Here, the Termination and Suspension/Modification Petitions were "finally determined in whole or in part" in Claimant's favor and, therefore, Employer was obligated to pay the reasonable costs of the litigation in this matter. Id. Section 440(a) permits attorney's fees to be excluded from these costs if an employer demonstrates a reasonable basis for its contest, but it does not provide a similar exclusion for other litigation costs. The WCJ found Employer's contest of the Termination Petition reasonable based on its presentation of medical testimony that, had it been credited, would have supported terminating Claimant's benefits. Thus, the WCJ correctly excluded such costs from the litigation costs Employer was required to pay under the Act. We see no error in the WCJ's award of other litigation costs in this matter.

For the foregoing reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER, Judge**

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diamond Manufacturing Company,     :
                                   :
               Petitioner     :
                                   :
           v.                 :    No. 665 C.D. 2015
                                   :
Workers' Compensation Appeal     :
Board (Archavage),                 :
                                   :
            Respondent     :

## **O R D E R**

**NOW**, April 11, 2016, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**